# COUNTY OF WASHINGTON.

## Asa How *versus* Harriet How, *Adm'x.*

A, by written contract, stipulated with B to do certain things during the lifetime of B and his wife, and of the survivor. After the decease of A, his administratrix refused longer to perform the contract. In a suit by B against the administratrix, the Court directed the jury, neither party objecting thereto, to return the amount of damage for one year, as, from the sum so found, the amount for which the verdict should be, could be ascertained by computation.

Under this direction, the jury returned a general verdict for a specified sum as damages, which was afterwards amended, by order of the full Court, by inserting the amount, which was the value of the annuity, as ascertained by Wigglesworth's table, for the expectation of life of the plaintiff's wife, who was much younger than the plaintiff.

On Report by Appleton, J.

This was an action of ASSUMPSIT on a special contract, dated December 17th, 1846, by which the defendant's intestate promised to keep upon a farm a certain amount of stock and farming utensils, and to do certain other things stipulated in the contract.

It was contended for the plaintiff that he, having a farm well stocked and provided with implements for its use, caused all the property to be conveyed to his son, Mark How, who gave to the plaintiff a lease of the farm during the natural life of himself and that of his wife.

Mark Howe improved the farm and supported the plaintiff and his wife thereon, and performed his contract of December 17th, 1846, until the year 1854, when he died. His widow was appointed administratrix of his estate. The next year after her husband's decease, the defendant left the farm, carrying away with her nearly all the stock and farming tools. This action was brought in the year 1857.

How v. How.

There was testimony introduced by plaintiff, to show the damage he suffered by the non-performance of the contract, and the injury to the farm caused thereby.

It appeared in evidence, that the stock and farming tools on the farm were received by the defendant's intestate from John How, who had them of the plaintiff, at whose request they were delivered to Mark How.

The defendant's counsel offered evidence to prove, that the defendant was prevented from performing the contract by the acts of the plaintiff; that the intestate received a deed of the farm from one Fisher, whose claim upon the farm he paid for the conveyance of the same to him; but the Court excluded the evidence.

1st. The defendant's counsel requested the Court to instruct the jury, that the contract declared on was without consideration, as between Mark How and the plaintiff.

2d. That the contract, having been fulfilled by the intestate in his lifetime, was not binding on his administratrix.

3d. That the contract was for the benefit of the farm, and for the purpose of keeping up its fertility; that the intestate and her family were entitled to maintenance out of the increase of the place; and, in case of the failure of the intestate or his administratrix to keep the personal property named in the contract upon the farm, if the Court shall consider that the contract is binding upon the estate, the plaintiff is not entitled to recover any more than the value of his proportion of the use of such personal property during his life, and that proportion is to be ascertained by distributing, *per rata*, the value of such use among the different members of the family and the farm.

4th. That, if the contract was binding upon the administratrix, the plaintiff could not recover any damages which accrued to his wife.

The presiding Judge did not give the requested instructions any further than they are contained in the following instructions : —

The presiding Judge directed the jury to inquire if the

contract in question was founded in a good consideration; and, if so, was the contract broken? That, by this contract, the intestate, Mark How, bound himself to keep on the place where plaintiff then lived, the stock and tools as specified, to the amount of $419, during life of plaintiff and wife; that this contract was binding on him, and, in case of death, on his estate; and that defendant would be liable to damages for a breach of the same. The presiding. Judge suggested to the counsel, that the jury find the annual damages and that the verdict be amended by inserting such sum as the plaintiff would be entitled to recover, at that annual rate, for the lives of himself and wife, that being only a matter of computation. To this, though the counsel did not specially assent, as no objection was made, the jury were directed to find the annual damages the plaintiff sustained by reason of the defendant's non-performance of the contract of December 17, 1846; that, in considering this question, they would bear in mind that some of the stock would not be of any value to plaintiff, as he would be obliged to feed them and take care of them, and this expense should be considered in ascertaining the damages for not having kept the stock and tools on the place. The jury were also directed to find the annual damages upon the principle contended for by the defendant.

The jury found a general verdict for plaintiff, assessing damages at $43,65, and found specially, that, on defendant's principle of assessment, they should be $21,82½. If the action is not maintainable, a new trial is to be granted. If the rulings, (except as damages,) were erroneous, the case is to stand for trial; and if both modes of assessing damages are erroneous, then the case is to stand for trial. If the damages are to be according to either mode of computation, the Court may determine, and the verdict shall be amended accordingly.

_J. Granger,_ for the plaintiff.

_Talbot,_ for the defendant.

How *v.* How.

The opinion of the Court was drawn up by

GOODENOW, J.—This is an action of assumpsit, on a special contract, dated Dec. 17, 1846. The plaintiff, having a farm with live stock and farming tools, conveyed the same to the defendant's intestate, Mark How, who was his son, and who undertook to carry on the farm, and to maintain the plaintiff and his wife, and keep on the farm the same amount of stock and farming tools as the plaintiff then had on the same, and to pay the taxes, and furnish the plaintiff and his wife with a horse and carriage whenever they desired, during their natural lives and the life of the survivor. Mark performed the contract during his lifetime. He died in the year 1854. Harriet How administered on his estate; and the jury have found that she has not performed the obligation, contained in the contract, since the decease of Mark How. Under the directions of the presiding Justice at the trial, the jury found the damages to the plaintiff, for one year, to be in amount $43,65. The verdict does not state that the jury estimated the damages only for one year, but it is fairly to be inferred from the report of the Judge, and that the defendant acquiesced in this mode of settling the damages, without objection. As the chances of life of the plaintiff and his wife, and the value of an estate for life, were matters of computation, the Judge suggested to the counsel, that the jury find the annual damages, and that the verdict be amended, by rendering judgment for such sum as the plaintiff would be entitled to recover, at that annual rate, for the life of himself and wife. To this no objection was made on either side, and the Judge directed the jury to find the annual damages the plaintiff sustained by reason of the defendant's non-performance of the contract declared on.

What was the value of this annuity of $43,65 on the 8th of April, 1855? The plaintiff was then seventy-six years of age, and his wife's age was sixty-four years. By Wigglesworth's table, the expectation of life of Mrs. How, the wife, it is alleged, would be thirteen years, and that the value of the annuity of $43,65, for thirteen years, was $410. If there is no mistake in this calculation, the plaintiff is entitled to

have the verdict amended accordingly, and to have judgment rendered for that amount, with interest on the same from the 8th of April, 1855, to the time of the rendition of the same. *Id certum est, quod certum reddi potest.* We are of opinion that this question has been fully and fairly litigated, and that the jury have passed upon it, under instructions which were unobjectionable, and that there is no such error in the form of the verdict, or in the ruling of the Justice presiding, as to require a new trial.

> · *Judgment for $410, damages, and
> interest from April* 8, 1855, *and for costs.*

TENNEY, C. J., RICE, APPLETON and CUTTING, JJ., concurred.